JONATHAN F. MITCHELL*
Texas Bar No. 24075463
Mitchell Law PLLC
106 East Sixth Street, Suite 900
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3940 (fax)
jonathan@mitchell.law

TALCOTT J. FRANKLIN*
Texas Bar No. 24010629
Talcott Franklin PC
1920 McKinney Avenue 7th Floor
Dallas, Texas 75201
(214) 736-8730 (phone)
(800) 727-0659 (fax)
tal@talcottfranklin.com

BRADLEY BENBROOK
California Bar No. 177786
Benbrook Law Group, PC
400 Capitol Mall, Suite 2530
Sacramento, California 95814
(916) 447-4900 (phone)
(916) 447-4904 (fax)
brad@benbrooklawgroup.com

* admitted *pro hac vice*

*Counsel for Plaintiffs and Proposed Classes*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Teresa Boyle, Renee Browne, Stephanie Caudel, Terrance David, Samira Golbad, Elizabeth McAdams, Kenton Miller, Jamie Snyder, Erin Thompson, and Don Weber, as individuals, and on behalf of others similarly situated,<br><br>Plaintiffs, | Case No. 3:19-cv-00426-VC<br><br>**Third Amended Complaint**<br>**Class Action** |

v.

**California State University Employees Union, SEIU Local 521, SEIU Local 721, SEIU Local 1021, SEIU Local 2015**, as individual defendants and as representatives of the class of all chapters and affiliates of SEIU California,

Defendants.

1    Teresa Boyle, Renee Browne, Stephanie Caudel, Terrance David, Samira Golbad,

2    Elizabeth McAdams, Kenton Miller, Jamie Snyder, Erin Thompson, and Don Weber

3    are current or former public employees who were forced to pay money to affiliates of

4    the Service Employees International Union (SEIU) in violation of their constitutional

5    rights. They sue on behalf on themselves and others for a refund of money that was

6    taken from them in violation of the Constitution. The plaintiffs are also seeking

7    prospective relief against constitutional violations that the defendants have been

8    committing in the wake of *Janus v. American Federation of State, County, and*

9    *Municipal Employees Council 31*, 138 S. Ct. 2448 (2018).

10    The Court has already dismissed counts 1, 2, 5, 7, and 9 of the first amended

11    complaint with prejudice or without leave to amend, ECF No. 152, and the plaintiffs

12    will not replead those claims, as the law of the Ninth Circuit does not require that

13    those claims be repleaded to preserve them for appeal. *See Lacey v. Maricopa County*,

14    693 F.3d 896, 928 (9th Cir. 2012) ("For claims dismissed with prejudice and without

15    leave to amend, we will not require that they be repled in a subsequent amended

16    complaint to preserve them for appeal."). The plaintiffs have also omitted the

17    previously dismissed defendants from this amended complaint, as well the factual

18    allegations made against those previously dismissed defendants, although they

19    respectfully preserve those earlier allegations for appeal. We are also omitting the

plaintiffs who no longer have live claims against the defendants, while preserving the claims of those now-dismissed plaintiffs for appeal. Finally, the plaintiffs have decided to drop counts 6 and 10 and will not pursue those claims further.

The plaintiffs will number the counts in this pleading to correspond with the counts asserted in the first amended complaint.

## JURISDICTION

1.  The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367.

2.  Venue is proper because at least one defendant resides or has its offices located in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## INTRADISTRICT ASSIGNMENT

3.  A substantial part of the events or omissions that gave rise to the claims occurred in the San Francisco Division. *See* Local Rule 3-2(c).

## PARTIES

4.  Plaintiff Teresa Boyle resides in Los Angeles County, California.

5.  Plaintiff Renee Browne resides in San Diego County, California.

6.  Plaintiff Stephanie Caudel resides in Riverside County, California.

7.  Plaintiff Terrance David resides in Riverside County, California.

8.  Plaintiff Samira Golbad resides in Riverside County, California.

9.  Plaintiff Elizabeth McAdams resides in Contra Costa County, California.

10.  Plaintiff Kenton Miller resides in Kern County, California.

11.  Plaintiff Jamie Snyder resides in Riverside County, California.

12.  Plaintiff Erin Thompson resides in San Mateo County, California.

13.  Plaintiff Don Weber resides in Monterey County, California.

14.  Defendant California State University Employees Union (CSUEU), also known as SEIU Local 2579, is a labor union whose offices are located at 1108 O

Street, #500, Sacramento, California 95814. CSUEU is an affiliate of SEIU California. CSUEU is sued as an individual defendant and as a representative of the class of all chapters and affiliates of SEIU California.

15. Defendant SEIU Local 521 is a labor union whose offices are located at 5228 East Pine Avenue, Fresno, California 93727. SEIU Local 521 is an affiliate of SEIU California. SEIU Local 521 is sued as an individual defendant and as a representative of the class of all chapters and affiliates of SEIU California.

16. Defendant SEIU Local 721 is a labor union whose offices are located at 1545 Wilshire Boulevard, Suite 100, Los Angeles, California 90017. SEIU Local 721 is an affiliate of SEIU California. SEIU Local 721 is sued as an individual defendant and as a representative of the class of all chapters and affiliates of SEIU California.

17. Defendant SEIU Local 1021 is a labor union whose offices are located at 447 29th Street, Oakland, California 94609. SEIU Local 1021 is an affiliate of SEIU California. SEIU Local 1021 is sued as an individual defendant and as a representative of the class of all chapters and affiliates of SEIU California.

18. Defendant SEIU Local 2015 is a labor union whose offices are located at 2910 Beverly Boulevard, Los Angeles, California 90057. SEIU Local 2015 is an affiliate of SEIU California. SEIU Local 2015 is sued as an individual defendant and as a representative of the class of all chapters and affiliates of SEIU California.

## STATEMENT OF FACTS—CSUEU PLAINTIFFS

### 1. Renee Browne

19. Plaintiff Renee Browne is employed by Cal State University San Marcos. She works as an accounts payable technician.

20. Ms. Browne began her employment in an "agency shop," where she was forced to either join the CSUEU and pay full membership dues, or else pay "fair share service fees" to the union as a condition of her employment.

21. Ms. Browne opposed and continues to oppose paying dues to the CSUEU, because she disapproves of the union's political advocacy and the grossly excessive salaries that the union pays its leaders.

22. Nevertheless, Ms. Browne enrolled in union membership because she was led to believe that she was required to join the union as a condition of her employment.

23. Neither the CSUEU nor Ms. Browne's employer ever informed her that her union membership dues would be used to fund political lobbying and ideological causes that are not germane the union's duties as a collective-bargaining representative. Had Ms. Browne been informed that her union membership dues would be used in this manner, she never would have agreed to join the union or submit to full membership dues.

24. Ms. Browne never would have joined or paid any money to the union had she not been forced to work in an unconstitutional agency shop.

25. After the Supreme Court announced its ruling in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018), Ms. Browne resigned her union memberships and demanded that the union stop tapping her paychecks.

26. On August 28, 2018, Ms. Browne sent a resignation e-mail to Vanessa Vincent, the President of CSUEU Chapter 321. The e-mail read: "I am resigning my membership in the CSUEU Chapter 321 and all of its affiliates effective immediately. Please immediately stop taking union membership dues or any other union-related fees from my paycheck.  Let me know if there is any other action needed from me on this." *See* Exhibit 6.

27. Ms. Browne sent this resignation e-mail from her work e-mail account, and she cc'd Ms. Alejandra Sanchez, the Vice President of CSUEU Chapter 321 and an Administrative Support Coordinator at CSU San Marcos. Ms. Browne also cc'd Jane Cross, the director of payroll services at CSU San Marcos. *See* Exhibit 6.

28. On September 10, 2018—13 days after Ms. Browne sent her resignation e-mail—a union official e-mailed Ms. Browne and informed her that the CSUEU would continue to take union dues from her paycheck notwithstanding Ms. Browne's resignation. The e-mail read: "Hi Renee, Cancellations are only accepted via mailed USPS letter, signed with the last 4 digits of your Social Security number to: CSUEU 120 K Street 2nd Floor Sacramento, CA 95814. If you have any additional questions please let me know." *See* Exhibit 6.

29. Neither Ms. Sanchez nor Ms. Cross has ever acknowledged or responded to Ms. Browne's request to halt the payroll deduction of union dues.

30. On September 17, 2018, Ms. Browne sued the CSUEU to compel the union to accept her resignation from union membership and to stop the union from garnishing her wages. *See* ECF No. 1.

31. In response to this lawsuit, CSUEU mailed Ms. Browne a letter on October 5, 2018, informing her that it would stop taking money from her paycheck in accordance with her instructions, and that it would refund any dues collected after Ms. Browne submitted her resignation on August 28, 2018. See ECF No. 32-12.

32. The union's voluntary decision to accept Ms. Browne's resignation and to stop tapping her paycheck in response to this lawsuit does not moot Ms. Browne's claims for declaratory or injunctive relief, nor does it deprive this Court of its responsibility to determine the legality of the union's conduct. *See City of Mesquite v. Aladin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

**2. Kenton Miller**

33. Plaintiff Kenton Miller is employed by Cal State University Bakersfield. He works as an Information Technology Consultant.

34. In 1999, Mr. Miller's employment switched to an "agency shop," where he was forced to either join the CSUEU and pay full membership dues, or else pay "fair share service fees" to the union as a condition of his employment.

35. Mr. Miller initially opted for "fair share service fees." But in 2003, after the union increased the "fair share service fees" to 95% of union membership dues, Mr. Miller reluctantly joined the union because he decided that the amount of money that he would save was not worth the loss of his vote on union leadership and collective-bargaining matters.

36. Mr. Miller never would have joined or paid any money to the union had he not been forced to work in an unconstitutional agency shop—and had he not been subject to an unconstitutional financial penalty for exercising his constitutional right to decline union membership.

37. After the Supreme Court announced its ruling in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018), Mr. Miller resigned his union membership and demanded that the union stop tapping his paychecks.

38. On July 23, 2018, Mr. Miller sent a resignation e-mail to CSUEU officials Nicholas Simas, Milissa Ackerly, Neil Jacklin, and Frank Pulido. The e-mail read: "I Kenton Miller, resign my membership in CSUE unit 9, immediately, and I want my payroll deduction to cease immediately. In light that the Supreme Court has said the taking of "Fair share" fees is unconstitutional, I want all past fees taken from me to be returned." *See* Exhibit 7.

39. Mr. Miller sent this resignation e-mail from his work e-mail account, and he cc'd Tina Williams, the Payroll Manager at CSU Bakersfield, and Marie Freeze, the Administrative Support Coordinator in the CSU Bakersfield payroll office. *See* Exhibit 7.

40.  On July 27, 2018, a union official e-mailed Mr. Miller and informed him that the CSUEU would continue to take union dues from his paycheck notwithstanding Mr. Miller's resignation. The e-mail read: "Hi Kenton, Cancellations are only accepted via USPS mail. Please sign and send a cancellation letter with the last 4 digits of your social security number to: CSU Employees Union, 1108 "O" Street 5th Floor Sacramento, CA 95814. If you have any additional questions please let us know." *See* Exhibit 7.

41.  Neither Ms. Williams nor Ms. Freeze has ever acknowledged or responded to Mr. Miller's request to halt the payroll deduction of union dues.

42.  On September 17, 2018, Mr. Miller sued the CSUEU to compel the union to accept his resignation from union membership and to stop the union from garnishing his wages. *See* ECF No. 1.

43.  In response to this lawsuit, CSUEU mailed Ms. Miller a letter on October 5, 2018, informing him that it would stop taking money from his paycheck in accordance with his instructions, and that it would refund any dues collected after Mr. Miller submitted his resignation on July 23, 2018. See ECF No. 32-12.

44.  The union's voluntary decision to accept Mr. Miller's resignation and to stop tapping his paycheck in response to this lawsuit does not moot Mr. Miller's claims for declaratory or injunctive relief, nor does it deprive this Court of its responsibility to determine the legality of the union's conduct. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

## STATEMENT OF FACTS—SEIU LOCAL 521 PLAINTIFFS

### 1. Don Weber

45.  Plaintiff Don Weber is employed by Monterey County. He works in the Sheriff's Office.

46.   Before the Supreme Court's ruling in *Janus*, Mr. Weber worked in an "agency shop," where employees were forced to either join SEIU Local 521 and pay full membership dues, or else pay "fair share service fees" to the union as a condition of their employment.

47. Mr. Weber reluctantly decided to join and remain in the union because he decided that the difference between full membership dues and "fair share service fees" would not have been worth the loss of his vote in collective-bargaining matters.

48. Mr. Weber never would have joined or paid any money to the union had he not been forced to work in an unconstitutional agency shop.

49.   After the Supreme Court announced its ruling in *Janus*, Ms. Weber promptly e-mailed the Monterey County Human Resources office and instructed them to halt the payroll deduction of union dues.

50.   HR refused to honor Mr. Weber's request, and told him to direct his request to the union.

51.   When Mr. Weber called SEIU Local 521 to resign his union membership, the union refused to accept his resignation over the phone. They insisted that he write and mail a resignation letter before the union would allow him to leave.

52.   Mr. Weber then mailed a resignation letter to SEIU Local 521's office in Salinas. Approximately one month later, the union mailed him a letter and told him that he must resign his membership by mailing a certified letter to a different office in San Jose or Sacramento, and that they would not accept a letter mailed to Salinas.

53.   In response to this letter, Mr. Weber called the union and demanded that they accept and process his resignation within 48 hours. After this phone call, the union took membership dues from Mr. Weber's paycheck for one more pay period and then finally stopped. He later received a phone call from the union confirming that his resignation from membership had been processed.

## STATEMENT OF FACTS—SEIU LOCAL 721 PLAINTIFFS

**1. Stephanie Caudel**

54.   Plaintiff Stephanie Caudel works as an accounting technician for Riverside County.

55.   Before the Supreme Court's ruling in *Janus*, Ms. Caudel worked in an "agency shop," where employees were forced to either join SEIU Local 721 and pay full membership dues, or else pay "fair share service fees" to the union as a condition of their employment.

56.   Ms. Caudel reluctantly decided to join the union because she decided that the difference between full membership dues and "fair share service fees" would not have been worth the loss of her vote in collective-bargaining matters.

57.   After the Supreme Court announced its ruling in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018), Ms. Caudel mailed a letter to SEIU Local 721 demanding that the union cease taking membership dues from her paycheck. *See* Exhibit 9. Ms. Caudel wrote: "In accordance with the recent Janus v AFSCME case, I am revoking SEIU's authorization to deduct any dues/fees from my paycheck. Please promptly forward a stop deduction notification to Riverside County payroll. I request that the appropriate person within SEIU 721 also reply to me, in writing, confirming receipt of this notice and indicating when the required stop deduction notice was sent." *See* Exhibit 9.

58.   Ms. Caudel sent this letter by certified mail, return receipt requested, and the union received Ms. Caudel's letter on August 8, 2018. *See* Exhibit 9.

59.   In response, Ms. Caudel received a letter from Bob Schoonover, the President of SEIU Local 721, dated August 14, 2018. *See* Exhibit 9.

60.   The Schoonover letter indicated that the union was not accepting Ms. Caudel's letter as a resignation of her union membership. It begins: "You are receiving

this letter because you contacted SEIU Local 721 to cancel your union membership. *Before making this decision*, I urge you to consider the important benefits of union membership. . . ." *See* Exhibit 9 (emphasis added).

61.   The Schoonover letter also announced that SEIU Local 721 would continue to take membership dues from Ms. Caudel's paycheck notwithstanding her instructions to stop. The letter explains: "[W]e want to be clear that you may cancel your membership at any time. But please be advised that, you made a commitment to pay an amount equal to dues to support your union's work when you became a member. To end that commitment, you agreed to terminate dues deductions only within the prescribed window period outlined in your contract or membership application. . . . If you are within your opt-out window period and still wish to cease dues deductions, you may do so by delivering a signed letter stating that you no longer wish to be a union member. Please be sure the letter contains the following information: full name (as it would appear on your paycheck); current mailing address and telephone number; employee ID number; and original signature. We encourage you to send all mailed correspondences by certified mail, so there is a record of it being sent." *See* Exhibit 9.

62.   Ms. Caudel also sent a letter to the Human Resources Department at Riverside County, informing them that she had revoked her authorization for payroll deductions and demanding that they halt the deduction of union-related fees from her paycheck. *See* Exhibit 9.

63.   On September 17, 2018, Ms. Caudel sued SEIU Local 721. *See* ECF No. 1. On October 8, 2018, Ms. Caudel moved for a class-wide preliminary injunction to compel the union to accept her resignation from union membership and to stop the union from garnishing her wages. *See* ECF Nos. 12–13.

64.   On November 15, 2018—after Ms. Caudel had sued and moved for a pre-liminary injunction—SEIU Local 721 mailed a letter to Ms. Caudel accepting her resignation from membership. *See* ECF Nos. 32-4. The union, however, informed Ms. Caudel that it would continue tapping her paycheck for "an amount equal to dues"—even though Ms. Caudel is no longer a member of the union. *See id*.

65.   The union's voluntary decision to accept Ms. Caudel's resignation in re-sponse to this lawsuit does not moot Ms. Caudel's claims for declaratory or injunctive relief, nor does it deprive this Court of its responsibility to determine the legality of the union's conduct. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

**2. Terrance David**

66.   Plaintiff Terrance David works as an IT business systems analysis for River-side County.

67.   Before the Supreme Court's ruling in *Janus*, Mr. David worked in an "agency shop," where employees were forced to either join SEIU Local 721 and pay full membership dues, or else pay "fair share service fees" to the union as a condition of their employment.

68.   Mr. David was never told that he had a constitutional right to refuse union membership and pay a reduced amount in "fair share service fees," either by his em-ployer or by the unions that he was compelled to support.

69.   Because Mr. David was never informed of his rights, he was enrolled in un-ion membership and paid dues to SEIU Local 721 until the Supreme Court's ruling in *Janus*.

70.   Mr. David never would have joined or paid money to SEIU Local 721 had he not been forced to work in an unconstitutional agency shop.

71.   After the Supreme Court announced its ruling in *Janus*, Mr. David resigned his membership in SEIU Local 721 office and demanded that the union cease taking membership dues from his paycheck. *See* Exhibit 14.

72.   The union, however, refused to honor Mr. David's resignation or his request to halt the payroll deductions of union dues. Instead, the union mailed Mr. David the same letter from Bob Schoonover, the President of SEIU Local 721, dated August 14, 2018, that Ms. Caudel had received. *See* paragraphs 60–61; *see* Exhibit 14. Mr. David interpreted this letter to mean that the union was not accepting his resignation from membership that he would need to submit a *second* letter to make his resignation effective. See Exhibit 14 ("You are receiving this letter because you contacted SEIU Local 721 to cancel your union membership. *Before making this decision*, I urge you to consider the important benefits of union membership. . . ." (emphasis added)).

73.   On September 11, 2018, Mr. David mailed a second letter to SEIU Local 721 that read: "Dear SEIU, This is my second request to remove me from being a union member. I no longer wish to be a union member. Please immediately stop deducing union dues from my paycheck." Exhibit 14. Mr. David sent this letter by certified mail. *See id*.

74.   In response, the union mailed Mr. David the same letter it had previously sent from Bob Schoonover, this time dated September 18, 2018. *See* Exhibit 14.

75.   When Mr. David sued SEIU Local 721 on March 6, 2019, the union was continuing to take union-membership dues from Mr. David's paycheck, in defiance of his resignation letter and his demands to immediately halt the payroll deduction of union fees.

76.   After Mr. David sued SEIU Local 721 over these unauthorized payroll deductions, the union mailed him a letter on March 29, 2019, informing him that dues

1   deductions had ceased, and included a check that refunded the deductions that the

2   union had made since October 16, 2018.

**3. Samira Golbad**

4   77.   Plaintiff Samira Golbad works as an accounting technician for Riverside

5   County.

6   78.   Before the Supreme Court's ruling in *Janus*, Ms. Golbad worked in an

7   "agency shop," where employees were forced to either join SEIU Local 721 and pay

8   full membership dues, or else pay "fair share service fees" to the union as a condition

9   of their employment.

10   79.   When Ms. Golbad started working for Riverside County in February 2016,

11   she was led to believe that union membership was a mandatory condition of employ-

12   ment. Neither the union nor Ms. Golbad's employer had ever informed her that she

13   had a constitutional right to refuse union membership and pay a reduced amount in

14   "fair share service fees."

15   80.   Ms. Golbad never would have joined or paid money to the union had she

16   not been forced to work in an unconstitutional agency shop.

17   81.   After the Supreme Court announced its ruling in *Janus*, Ms. Golbad mailed

18   a letter to SEIU Local 721's Riverside office and demanded that the union cease tak-

19   ing membership dues from her paycheck. *See* Exhibit 10.

20   82.   In response, Ms. Golbad received the same letter from Bob Schoonover, the

21   President of SEIU Local 721, that Ms. Caudel and Mr. David had received. *See* para-

22   graphs 60–61; *see also* Exhibit 10. Ms. Golbad received these letters twice, the first

23   was dated August 14, 2018, and the second was dated August 21, 2018.

24   83.   On September 4, 2018, Ms. Golbad sent a *second* letter to SEIU Local 721

25   in response to Mr. Schoonover's letter of August 14, 2018. The letter reiterated Ms.

26   Golbad's demand to halt the payroll deduction of union dues and concluded with the

following: "I do not wish to remain a member of SEIU 721. **Please immediately notify Riverside County payroll that I have exercised my right to opt-out of your union."** *See* Exhibit 10 (emphasis in original).

84.   In response to this letter, SEIU 721 sent Ms. Golbad the same letter from Bob Schoonover that she had previously received. This time the letter was dated September 6, 2018. *See* Exhibit 10.

85.   The Schoonover letter implies that the union was not accepting Ms. Golbad's resignation, in addition to rejecting her demands to halt the payroll deduction of union dues. *See* Exhibit 10 ("You are receiving this letter because you contacted SEIU Local 721 to cancel your union membership. *Before making this decision*, I urge you to consider the important benefits of union membership. . . ." (emphasis added)). But Ms. Golbad had already made her decision to resign and communicated that decision clearly and unequivocally in her letter of September 4, 2018. The union of course may ask Ms. Golbad to reconsider her decision to resign, but it cannot pretend as though she has not *made* that decision that they are asking her to reconsider.

86.   Ms. Golbad also asked the Human Resources department at Riverside County to stop diverting her paycheck to SEIU Local 721. Human Resources refused to honor Ms. Golbad's request, explaining that they cannot halt the payroll deduction of union dues unless the union instructs them to stop.

87.   On September 17, 2018, Ms. Golbad sued SEIU Local 721. *See* ECF No. 1. On October 8, 2018, Ms. Golbad moved for a class-wide preliminary injunction to compel the union to accept her resignation from union membership and to stop the union from garnishing her wages. *See* ECF Nos. 12–13.

88.   On November 16, 2018—after Ms. Golbad had sued and moved for a preliminary injunction—SEIU Local 721 mailed a letter to Ms. Golbad accepting her

resignation from membership. *See* ECF Nos. 32-5. The union, however, informed Ms. Golbad that it would continue tapping her paycheck for "an amount equal to dues"—even though Ms. Golbad is no longer a member of the union. *See id*.

89.   The union's voluntary decision to accept Ms. Golbad's resignation in response to this lawsuit does not moot Ms. Golbad's claims for declaratory or injunctive relief, nor does it deprive this Court of its responsibility to determine the legality of the union's conduct. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

**4. Jamie Snyder**

90.   Plaintiff Jamie Snyder is employed by Riverside County and works as an Accounting Technician.

91.   Before the Supreme Court's ruling in *Janus*, Ms. Snyder worked in an "agency shop," where employees were forced to either join SEIU Local 721 and pay full membership dues, or else pay "fair share service fees" to the union as a condition of their employment.

92.   When Ms. Snyder started working for Riverside County 25 years ago, she was led to believe that union membership was a mandatory condition of employment. Neither the union nor Ms. Snyder's employer had ever informed her that she had a constitutional right to refuse union membership and pay a reduced amount in "fair share service fees."

93.   Ms. Snyder never would have joined or paid money to the union had she not been forced to work in an unconstitutional agency shop. And Ms. Snyder never would have joined the union had she been informed of her option to decline union membership and pay "fair-share service fees" instead.

94.   After the Supreme Court announced its ruling in *Janus*, Ms. Snyder mailed a letter to both SEIU Local 721 and to Riverside County's Human Resources Department revoking her previous consent to payroll deductions and demanding that the union and Riverside County stop diverting her wages to the union. *See* Exhibit 16. Ms. Snyder sent this letter by certified mail, return receipt requested. *See* Exhibit 16.

95.   In response, Ms. Snyder received the same letter from Bob Schoonover, the President of SEIU Local 721, that Ms. Caudel, Mr. David, and Ms. Golbad had received. *See* paragraphs 60–61; *see also* Exhibit 16.

96.   On November 13, 2018, Ms. Snyder mailed a second letter to SEIU Local 721, in which she once again revoked any previous authorization she might have given to payroll deductions. *See* Exhibit 16. This time, she stated emphatically: "**I do not wish to remain a member of SEIU 721; I am resigning from SEIU 721 effective immediately. Please immediately notify Riverside County payroll that I have exercised my right to opt-out of your union.**" *See* Exhibit 16 (emphasis in original).

97.   This time, Mr. Schoonover responded with a somewhat different letter that explicitly accepted Ms. Snyder's resignation from union membership. Mr. Schoonover wrote: "This letter confirms your request to cancel your union membership. As of the date of this letter, your status has been changed to Nonmember and you will no longer receive or be entitled to the rights and benefits only afforded to full dues paying members of SEIU Local 721." *See* Exhibit 16.

98.   Mr. Schoonover's letter went on to say, however, that the union would continue tapping Ms. Snyder's paycheck for "an amount equal to dues"—even though Ms. Snyder is no longer a member of the union. See Exhibit 16.

99.   When Ms. Snyder sued SEIU Local 721 on March 6, 2019, the union was continuing to take union-membership dues from Ms. Snyder's paycheck, in defiance

of her resignation letter and her demands to immediately halt the payroll deduction of union fees.

100. After Ms. Snyder sued SEIU Local 721 over these unauthorized payroll deductions, the union mailed her a letter on April 16, 2019 informing her that dues deductions had ceased as of April 8, 2019, and the union has stopped tapping Ms. Synder's paycheck as of April 8, 2019.

## STATEMENT OF FACTS—SEIU LOCAL 1021 PLAINTIFFS

### 1. Elizabeth McAdams

101. Plaintiff Elizabeth McAdams is employed by Alameda County and works in the Sheriff's Office.

102. Before the Supreme Court's ruling in *Janus*, Ms. McAdams worked in an "agency shop," where employees were forced to either join SEIU Local 1021 and pay full membership dues, or else pay "fair share service fees" to the union as a condition of their employment.

103. Ms. McAdams reluctantly chose to join and remain a member of SEIU Local 1021 because she decided that the difference between full membership dues and "fair share service fees" would not have been worth the loss of her vote in collective-bargaining matters.

104. Ms. McAdams never would have joined or paid any money to SEIU Local 1021 had she not been forced to work in an unconstitutional agency shop—and had she not been subject to an unconstitutional financial penalty for exercising her constitutional right to decline union membership.

105. After the Supreme Court announced its ruling in *Janus*, Ms. McAdams resigned her union membership and demanded a halt to payroll deductions. On September 24, 2018, Ms. McAdams mailed a certified, return-receipt letter to SEIU

1021, informing it that she was resigning from the union and demanding an immediate halt to the diversion of union fees from her paycheck. *See* Exhibit 15.

106. The union did not acknowledge or honor Ms. McAdams's instructions, and the payroll deduction of union-membership dues continued.

107. On November 19, 2018, Ms. McAdams e-mailed Peter Masiak at SEIU Local 1021 informing him of the resignation letter than she had mailed and asking why payroll deductions were continuing. *See* Exhibit 15. Mr. Masiak responded by asking Ms. McAdams where she had mailed the letter and to whom it was addressed, but he took no further action and did not respond further to Ms. McAdams's e-mails. *See* Exhibit 15.

108. Finally, on December 3, 2018, Ms. McAdams sent the following e-mail to Mr. Masiak: "Mr. Masiak, I have been patient[ly] waiting for the union dues deductions to cease. If you need a copy of the letter I sent, I will mail one to you. If nothing is done, I will seek legal counsel, as it has been since September that I requested the dues not be deducted from my paycheck." *See* Exhibit 15.

109. Shortly after Ms. McAdams sent this e-mail threatening legal action, she received an e-mail from Ed Hanley, the Membership Director at SEIU Local 1021, which said: "Hello Ms. McAdams, Please call me at 510-350-9820 so I can help resolve your request to resign from the union."

110. When Ms. McAdams called Mr. Henley, he informed her that the union would not accept the resignation letter that she had mailed on September 24, 2018, because it did not have an original signature on it. Mr. Henley instructed Ms. McAdams to mail to mail a new resignation letter that included an original (wet) signature on the document.

111. Ms. McAdams promptly mailed a new resignation letter to the union in compliance with Mr. Henley's instructions. Yet the union continued to divert membership dues from her paycheck.

112. On December 16, 2018, after Ms. McAdams noticed that the union was *still* tapping her paycheck even after she had mailed her second resignation letter, Ms. McAdams e-mailed Mr. Hanley and said: "Hello Mr. Hanley, I just looked at my paystub and the union dues is still being deducted from my pay. Did you receive my signed letter yet?" See Exhibit 15.

113. Mr. Hanley did not respond to this e-mail.

114. Finally, on January 13, 2019, Ms. McAdams sent the following e-mail to Peter Masiak: "Mr. Masiak, I have not heard back from either you or Ed Hanley regarding the deduction in my paychecks. This is the letter I sent. What do I need to do to get this resolved? Will you help me as you did other Sheriff's Technicians? The very mention of legal action from one technician got him a quick response and a promise of reimbursement."

115. Mr. Masiak did not respond to this e-mail.

116. On February 22, 2019, the union finally stopped diverting membership dues from Ms. McAdams's paycheck—nearly five months after she had resigned her membership on September 24, 2018.

## STATEMENT OF FACTS—SEIU LOCAL 2015 PLAINTIFFS

### 1. Teresa Boyle

117. Plaintiff Teresa A. Boyle is a home health-care provider. Ms. Boyle cares for her mother and is paid for her services by California's Medicaid program.

118. Ms. Boyle started working as a home health-care provider in 2011. At that time, Ms. Boyle worked in an "agency shop," where home health-care workers were

1    forced to either join SEIU Local 2015 and pay full membership dues, or else pay "fair

2    share service fees" to the union.

3        119. Ms. Boyle noticed that SEIU Local 2015 was taking money from her

4    paychecks and asked whether she could stop these payments. Ms. Boyle was told that

5    there was no way to avoid paying dues to the union.

6        120. Neither the union nor the State ever informed Ms. Boyle that she had a

7    constitutional right to refuse union membership and pay a reduced amount in "fair

8    share service fees" to SEIU Local 2015. Because Ms. Boyle was left unaware of this

9    option, she remained a member of SEIU Local 2015 during her time as a home

10   health-care provider.

11       121. When the Supreme Court announced its ruling in *Harris v. Quinn*, 134 S.

12   Ct. 2618 (2014), neither the union nor the State ever informed Ms. Boyle that she

13   had the right to stop the union from garnishing her wages by resigning her union

14   membership. Ms. Boyle did not learn about the *Harris* ruling until after the Supreme

15   Court announced its decision in *Janus*. Because Ms. Boyle was left unaware of her

16   constitutional rights under *Harris*, she remained a member of SEIU Local 2015 from

17   2014 through 2018.

18       122. Ms. Boyle never would have joined or paid any money to SEIU Local 2015

19   had she not been forced to work in an unconstitutional agency shop from 2011–2014.

20       123. Ms. Boyle would not have remained in the union after *Harris* had she been

21   informed of her constitutional rights under that decision.

22       124. After the Supreme Court announced its ruling in *Janus*, Ms. Boyle mailed a

23   letter to the union on July 15, 2018, announcing her resignation from SEIU Local

24   2015 and demanding that the union stop taking membership dues from her

25   paychecks. *See* Exhibit 11.

125. The union responded by mailing a letter from Laphonza Butler, the President of SEIU Local 2015, that resembles the Schoonover letter described in paragraphs 60–61. *See* Exhibit 11.

126. The Butler letter acknowledges that Ms. Boyle "may cancel [her] union membership at any time." *Id*. But it also indicates that the union was refusing to accept Ms. Boyle's resignation in her letter of July 15, 2018. The letter said: "*If you still want to cancel our membership*, you may do so by sending a signed letter stating that you no longer wish to be a union member, and stating that you understand that your dues deductions will continue unless and until you send a letter during the period specified above (or during any of the later cancellation periods available to you)." *Id*. (emphasis added).

127. The final paragraph in the Butler letter also indicates that the union was refusing to accept Ms. Boyle's resignation. *See id*. ("*Before making this important decision*, I urge you to consider the important benefits of union membership." (emphasis added)). But Ms. Boyle's letter of July 15, 2018, made clear that she had already made the decision to resign. *See* Exhibit 11 ("With this letter I am resigning my membership in the union."); *id*. ("I am immediately terminating my membership in the union and all of its affiliates"). The Butler letter responds as though Ms. Boyle had merely inquired about the possibility of resigning, when Ms. Boyle had clearly and unequivocally announced that she *was* resigning and already made her decision.

128. The Butler letter also announced that SEIU Local 2015 would continue to take membership dues from Ms. Boyle's paycheck. The letter explains: "As we explained when you contacted the Union, you chose to sign a union membership card that includes a commitment to continue paying dues until either the fifteen-day period after to the anniversary date of the time the card was signed or until the fifteen-day period after the expiration date of your collective bargaining agreement (whichever is

sooner). If you do not request cancellation of dues deduction during any such fifteen-day period, the deductions will continue until the next such period, when you will again have the opportunity to cancel dues deductions. The next period during which you may cancel your dues authorization is **1/6/2019–1/20/2019**.”). *See* Exhibit 11.

129. On September 17, 2018, Ms. Boyle sued SEIU Local 2015. *See* ECF No. 1. On October 8, 2018, Ms. Boyle moved for a class-wide preliminary injunction to compel the union to accept her resignation from union membership and to stop the union from garnishing her wages. *See* ECF Nos. 12–13.

130. On October 22, 2018—after Ms. Boyle had sued and moved for a preliminary injunction—SEIU Local 2015 mailed a letter to Ms. Boyle accepting her resignation from membership. The union has also stopped taking money from Ms. Boyle's paycheck in response to this lawsuit. *See* ECF Nos. 32-14, 32-16.

131. The union's voluntary cessation of its unlawful conduct in response to this lawsuit does not moot Ms. Thompson's claims for declaratory or injunctive relief, nor does it deprive this Court of its responsibility to determine the legality of the union's conduct. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

**2. Erin Thompson**

132. Plaintiff Erin Thompson is a home health-care worker in San Mateo County. She cares for her sister and her nephew, both of whom live with her, as well as a third client who lives in San Francisco.

133. Ms. Thompson began working as home a health-care provider in 2012. At that time, Ms. Thompson lived in Los Angeles County.

134. Shortly after Ms. Thompson enrolled as a home health-care provider in 2012, two individuals affiliated with SEIU Local 2015 visited Ms. Thompson at her

1    home. They sought to persuade Ms. Thompson to join the union and contribute

2    money to "COPE," the SEIU's "Committee on Political Education."

3      135.  These individuals informed Ms. Thompson that her union membership dues

4    would be $10 per month and that her monthly COPE contribution would be $5 per

5    month.

6      136. They also informed Ms. Thompson that the COPE contribution was vol-

7    untary. They did not, however, tell Ms. Thompson that she had the right to decline

8    union membership and pay "fair share service fees" in lieu of union membership dues.

9      137. As a result, Ms. Thompson was led to believe that she was required to enroll

10    in the union as a condition of working as a home health-care provider.

11      138. Ms. Thompson signed the documents to enroll herself in union member-

12    ship, on the understanding that the union would take only $10 per month in mem-

13    bership dues from her paycheck. Ms. Thompson declined the union's invitation to

14    provide financial support to COPE.

15      139. After Ms. Thompson signed these documents in 2012, the State Controller

16    began deducting union dues from Ms. Thompson's paycheck and paying that money

17    directly to SEIU 2015.

18      140. Initially the union took only $10 per month from Ms. Thompson's

19    paycheck, consistent with the representations it made during the visit to her home.

20    But later the union began taking additional money from Ms. Thompson's paycheck

21    against her wishes.

22      141. In 2014, for example, the union started taking $10 in COPE deductions

23    from Ms. Thompson's paycheck. *See* Exhibit 12 (paystub dated December 8, 2014,

24    for services rendered to Kevan J. Hill). Worse, the union appears to have been taking

25    $10 per month in COPE deductions from *each* of the three separate monthly pay-

26    ments that Ms. Thompson receives for the three separate clients that she serves. *See*

*id.* (paystub dated July 9, 2018, for services provided to Elka Gilmore; paystub dated August 6, 2018 for services provided to Kevan J. Hill; paystub dated September 7, 2018, for services provided to Sharon M. Quinn, each with $10 taken for "COPE/PEOPLE"). But the union has not been entirely consistent; in some pay periods the union has chosen not to tap Ms. Thompson's paycheck for COPE contributions. *See id.* (paystub dated May 23, 2017, for services provided to Kevan J. Hill, with no COPE deductions taken out).

142. Worse still, the union has been taking monthly membership dues from *each* of the three separate monthly payments that Ms. Thompson receives for the three different clients that she serves. Monthly union dues are to be assessed *per worker*; they are not assessed per client—and they are not to be doubled or tripled whenever a home health-care worker takes on additional clients.

143. When the Supreme Court announced its ruling in *Harris v. Quinn*, 134 S. Ct. 2618 (2014), neither the union nor the State informed Ms. Thompson that she had the right to stop the union from garnishing her wages by resigning her union membership. Ms. Thompson did not learn about the ruling in *Harris* until shortly before the Supreme Court announced its decision in *Janus.* Because Ms. Thompson was unaware of her constitutional rights under *Harris*, she remained a member of SEIU Local 2015 from 2014 through 2018.

144. Ms. Thompson would not have remained in the union after *Harris* had she been informed of her constitutional rights under that decision.

145. Ms. Thompson never would have joined or paid any money to SEIU Local 2015 had she not been forced to work in an unconstitutional agency shop from 2011–2014.

146. On June 7, 2018—after *Harris* but before *Janus*—Ms. Thompson mailed a letter to SEIU Local 2015 announcing her resignation from the union and demanding that the union stop taking money from her paycheck. *See* Exhibit 12. Ms. Thompson sent this letter by certified mail, return receipt requested. *See* Exhibit 12.

147. Ms. Thompson never received the return receipt back after mailing this letter to SEIU Local 2015.

148. On July 11, 2018—two weeks after *Janus*—Ms. Thompson mailed a second letter to SEIU Local 2015 announcing her resignation from the union and demanding that the union stop taking money from her paycheck. *See* Exhibit 12. The union has not acknowledged or responded to that letter.

149. Ms. Thompson has telephoned the union at least nine times since 2015 in an effort to stop these unauthorized garnishments of her wages. Each time she has called the union has been unhelpful and uncooperative.

150. On September 17, 2018, Ms. Thompson sued SEIU Local 2015. *See* ECF No. 1. On October 8, 2018, Ms. Thompson moved for a class-wide preliminary injunction to compel the union to accept her resignation from union membership and to stop the union from garnishing her wages. *See* ECF Nos. 12–13.

151. On October 22, 2018—after Ms. Thompson had sued and moved for a preliminary injunction—SEIU Local 2015 mailed a letter to Ms. Thompson accepting her resignation from membership. The union has also stopped taking money from Ms. Thompson's paycheck in response to this lawsuit. *See* ECF Nos. 32-14, 32-20.

152. The union's voluntary cessation of its unlawful conduct in response to this lawsuit does not moot Ms. Thompson's claims for declaratory or injunctive relief, nor does it deprive this Court of its responsibility to determine the legality of the union's conduct. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

**Count 1: Refund of pre-*Janus* Compelled Payments**

153. The Court has dismissed this claim with prejudice, ECF No. 152 at 2, and the plaintiffs will not replead it but respectfully preserve this claim for appeal. *See Lacey*, 693 F.3d at 928.

**Count 2: For Violations of First Amendment Rights Under 42 U.S.C. § 1983 for Unconstitutionally Refusing to Accept Resignations From Union Membership, Brought by Plaintiffs Browne and Miller Against The CSUEU, on Behalf of Themselves and a Class of Others Similarly Situated; by Plaintiff Weber Against SEIU Local 521, on Behalf of Himself and a Class of Others Similarly Situated; by Plaintiffs Caudel, David, Golbad, and Snyder Against SEIU Local 721, on Behalf of Themselves and a Class Of Others Similarly Situated; by Plaintiff McAdams Against SEIU Local 1021, on Behalf of Herself and a Class of Others Similarly Situated; and by Plaintiffs Boyle and Thompson Against SEIU Local 2015, on Behalf of Themselves and a Class Of Others Similarly Situated**

154. Some but not all of the union defendants have violated or are violating the Constitution by refusing to promptly accept a public employee's resignation from union membership, or by imposing needless roadblocks in the path of those who are seeking to exercise their constitutional right to resign. Public employees have a constitutional right to terminate their union membership at any time, and when they assert this right the union must honor their wishes and immediately halt the payroll deductions of union dues. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984) ("Freedom of association therefore plainly presupposes a freedom not to associate." (citing *Abood v. Detroit Board of Education*, 431 U.S. 209, 234–35 (1977)).

155. The CSUEU violated Renee Browne's constitutional rights by refusing to promptly accept the resignation she submitted over e-mail on September 10, 2018, and by attempting to force her to take the needlessly burdensome step of mailing a signed letter to the CSUEU's Sacramento headquarters.

156. The CSUEU violated Kenton Miller's First Amendment rights by refusing to promptly accept the resignation he submitted over e-mail on July 27, 2018, and by attempting to force him to take the needlessly burdensome step of mailing a signed letter to the CSUEU's Sacramento headquarters.

157. The CSUEU's decision to change course and accept Ms. Browne and Mr. Miller's resignation e-mails in response to this lawsuit does not moot their claims for declaratory and injunctive relief, and it does not preclude them from serving as class representatives for other employees in the CSUEU bargaining units who may attempt to resign from the union.

158. Ms. Browne and Mr. Miller are suing on behalf of every present or future member of CSUEU who has attempted or will attempt to resign from the union. They are seeking: (a) a declaratory judgment that the CSUEU violated Ms. Browne and Mr. Miller's constitutional rights by refusing to accept their resignation e-mails; (b) an injunction that requires the CSUEU to promptly accept and process the resignation of any member who communicates his desire to resign, regardless of whether the resignation is communicated over the phone, in e-mail, or in writing; and (c) nominal and compensatory damages resulting from the CSUEU's failure to promptly accept a class member's resignation from union membership.

159. SEIU Local 521 violated Don Weber's First Amendment rights by refusing to accept his resignation over the phone, and by forcing him to take the needlessly burdensome step of mailing a signed letter to the union's headquarters. SEIU Local 521 further violated Mr. Weber's First Amendment rights by refusing to promptly accept the written letter he had mailed to the union's Salinas office, and by insisting that he mail a certified letter to a different union office.

160. Mr. Weber is suing on behalf of every present or future member of SEIU Local 521 who has attempted or will attempt to resign from the union. He is seeking:

(a) a declaratory judgment that SEIU Local 521 violated Mr. Weber's First Amendment rights by refusing to accept his resignation over the phone; (b) a declaratory judgment that SEIU Local 521 violated Mr. Weber's First Amendment rights by refusing to promptly accept the written resignation that he mailed to the union's Salinas office; (c) an injunction that requires SEIU Local 521 to promptly accept and process the resignation of any member who communicates his desire to resign, regardless of whether the resignation is communicated over the phone, in e-mail, or in writing; and (d) nominal and compensatory damages resulting from SEIU Local 521's failure to promptly accept a class member's resignation from union membership.

161. SEIU Local 721 violated Stephanie Caudel, Terrance David, Samira Golbad, and Jamie Snyder's constitutional rights by failing to promptly accept and acknowledge their resignations from union membership. A union must immediately honor and implement a public employee's decision to resign from the union; it cannot require an employee to submit a second resignation letter after the employee clearly communicated his desire to resign in the first.

162. Ms. Caudel, Mr. David, Ms. Golbad, and Ms. Snyder are suing on behalf of every present or future member of SEIU Local 721 who has attempted or will attempt to resign from the union. They are seeking: (a) a declaratory judgment that SEIU Local 721 violated the plaintiffs' First Amendment rights by mailing the Schoonover letter in response their attempted resignations, which implied that the plaintiffs would need to take additional steps to make their resignations effective; (b) an injunction that requires SEIU Local 721 to promptly accept and process the resignation of any member who communicates his desire to resign, regardless of whether the resignation is communicated over the phone, in e-mail, or in writing; and (c) nominal and compensatory damages resulting from SEIU Local 721's failure to promptly accept a class member's resignation from union membership.

163. SEIU Local 1021 violated Elizabeth McAdams's First Amendment rights by refusing to accept the resignation letter that she mailed on September 24, 2018, and by forcing her to take the needlessly burdensome step of mailing an additional letter with an original signature to the union's headquarters. SEIU Local 1021 further violated Ms. McAdams's First Amendment rights by refusing to promptly inform her of its refusal to accept her original resignation and the reasons for its refusal.

164. Ms. McAdams is suing on behalf of every present or future member of SEIU Local 1021 who has attempted or will attempt to resign from the union. She is seeking: (a) a declaratory judgment that SEIU Local 1021 violated Ms. McAdams's First Amendment rights by refusing to accept her initial resignation letter of September 24, 2018; (b) a declaratory judgment that SEIU Local 1021 violated Ms. McAdams's First Amendment rights by refusing to promptly inform her of its refusal to accept her original resignation and the reasons for its refusal; (c) an injunction that requires SEIU Local 1021 to promptly accept and process the resignation of any member who communicates his desire to resign, regardless of whether the resignation is communicated over the phone, in e-mail, or in writing, and regardless of whether the resignation letter contains an original signature; and (d) nominal and compensatory damages resulting from SEIU Local 1021's failure to promptly accept a class member's resignation from union membership.

165. SEIU Local 2015 violated Teresa Boyle and Erin Thompson's First Amendment rights by refusing to promptly accept their resignations from union membership.

166. SEIU Local 2015's decision to change course and accept Ms. Boyle and Ms. Thompson's resignations in response to this lawsuit does not moot their claims for declaratory and injunctive relief, and it does not preclude them from serving as class representatives for other employees in the SEIU Local 2015 bargaining units who may attempt to quit leave the union.

167. Ms. Boyle and Ms. Thompson are suing on behalf of every present or future member of SEIU Local 2015 who has attempted or will attempt to resign from the union. They are seeking: (a) a declaratory judgment that SEIU Local 2015 violated Ms. Boyle and Ms. Thompson's constitutional rights by refusing to promptly accept their resignations from union membership; (b) an injunction that requires SEIU Local 2015 to promptly accept and process the resignation of any member who communicates his desire to resign, regardless of whether the resignation is communicated over the phone, in e-mail, or in writing; and (c) nominal and compensatory damages resulting from SEIU Local 2015's failure to promptly accept a class member's resignation from union membership.

168. The Court has dismissed Mariam Noujaim's claim against the California State Retirees and California State Employees Association for failing to promptly accept her resignation from union membership with prejudice, ECF No. 152 at 3, and Ms. Noujaim will not replead it but respectfully preserves this claim for appeal. *See Lacey*, 693 F.3d at 928.

**Count 3: For Violations of First Amendment Rights Under 42 U.S.C. § 1983 and for Violations of State Tort Law for Refusing to Halt Payroll Deductions in Response to an Employee's Attempted Resignation From Union Membership, Brought by Plaintiffs Browne and Miller Against The CSUEU, on Behalf of Themselves and a Class of Others Similarly Situated; by Plaintiff Weber Against SEIU Local 521, on Behalf of Himself and a Class of Others Similarly Situated; by Plaintiffs Caudel, David, Golbad, and Snyder Against SEIU Local 721, on Behalf of Themselves and a Class of Others Similarly Situated; by Plaintiff McAdams Against SEIU Local 1021, on Behalf of Herself and a Class of Others Similarly Situated; and by Plaintiffs Boyle and Thompson Against SEIU Local 2015, on Behalf of Themselves and a Class of Others Similarly Situated**

169. The claim asserted in Count 3 is distinct from the claims asserted in Counts 1, 2, and 6. Count 1 concerns whether the plaintiffs are entitled to a *refund* of compulsory payments that they made to the unions *before Janus* was decided. The Court

has already dismissed this claim on the ground that the union defendants are entitled to a "good faith" defense. Count 2 concerns a public employee's constitutional right to resign his union *membership*—a constitutional right of association that pre-dates *Janus* and is distinct from whether a public employee has a constitutional right to terminate payroll deductions that a union diverts from his wages. The plaintiffs in Count 2 are claiming that the union violated their First Amendment rights by failing to promptly accept their resignations from *membership* and removing their names from the union's membership rolls.

170. Claim 3, by contrast, concerns whether the defendants violated the plaintiffs' constitutional rights by continuing to divert money from their paychecks after the plaintiffs had informed the union of their desire to relinquish their membership and terminate payroll deductions. In other post-*Janus* lawsuits brought by employees who seek to terminate payroll deductions, unions have conceded that a public employee has a constitutional right to resign his union *membership* at any time, but argue that *payroll deductions* may nevertheless continue if the employee has signed an document promising to continue payroll deductions even after resigning from membership. And many public employees have signed union-membership applications that purport to require them to continue payroll deductions for a fixed period of time, even though there is nothing in these documents that purports to restrict their right to revoke their membership in the union. For these reasons, the right to resign one's *membership* in the union is distinct from one's right to *terminate payroll deductions*, and the plaintiffs properly brought Counts 2 and 3 as separate claims. It is possible, for example, that a court might conclude that a public employee has a constitutional right to resign his union membership at any time, but that he cannot terminate payroll deductions upon resigning if he signed a document promising to maintain payroll deductions for a fixed period of time.

171. When a public employee announces his resignation from union membership, the union must not only immediately accept the employee's resignation, it must also stop tapping the employee's paycheck unless and until the employee "clearly and affirmatively consents to pay." *See Janus*, 138 S. Ct. at 2486 ("Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay.").

172. The CSUEU, SEIU Local 521, SEIU Local 721, SEIU Local 1021, and SEIU Local 2015 have violated the Speech Clause and the Supreme Court's ruling in *Janus* by tapping the plaintiffs' paychecks for membership dues after they had clearly and unequivocally announced their resignations from the union. *See* Exhibit 6 (e-mail from Renee Browne) ("I am resigning my membership in the CSUEU Chapter 321 and all of its affiliates effective immediately. Please immediately stop taking union membership dues or any other union-related fees from my paycheck."); Exhibit 7 ("I Kenton Miller, resign my membership in CSUE unit 9, immediately, and I want my payroll deduction to cease immediately."); *see* Exhibit 10 (letter from Samira Golbad) ("I do not wish to remain a member of SEIU 721. Please immediately notify Riverside County payroll that I have exercised my right to opt-out of your union." (emphasis removed)); *see* Exhibit 11 (letter from Teresa Boyle) ("With this letter I am resigning my membership in the union.").

173. Any union-membership contract that purports to limit an employee's constitutional right to withdraw financial support upon resigning from the union is legally unenforceable. A public employee has the constitutional right to withdraw financial support from the union upon resigning his membership, and a union may not compel employees to surrender their constitutional rights as a condition of union membership.

174. In addition, any public employee that signed a pre-*Janus* union-membership contract was unconstitutionally coerced and did not provide legally valid consent. An employee that chose to join the union while working in an unconstitutional agency shop was *compelled* to pay at least the amount of "fair share service fees" to the union regardless of whether he joined, and any agreement to pay membership dues under these circumstances is tainted by the unconstitutional agency-shop arrangement. A person who is told, "Sign this contract or else I will take $500 per year from your paycheck," and then signs the contract in response to this "offer," has not provided legally valid consent.

175. The CSUEU, SEIU Local 521, SEIU Local 721, SEIU Local 1021, SEIU Local 2015, and every other union defendant must refund all money that they took from any public employee who had previously announced his resignation from the union and informed the union of that decision.

176. Ms. Browne and Mr. Miller are suing on behalf of all current and former members of the CSUEU whose paychecks were tapped for union-related payments after they had told the union that they were resigning their memberships. The class includes anyone who has ever fallen within this definition, including former and re-tired public employees, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

177. Mr. Weber is suing on behalf of all current and former members of SEIU Local 521 or its affiliates whose paychecks were tapped for union-related payments after they had told the union that they were resigning their memberships. The class includes anyone who has ever fallen within this definition, including former and re-tired public employees, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

178. Ms. Golbad is suing on behalf of all current and former members of SEIU Local 721 or its affiliates whose paychecks were tapped for union-related payments after they had told the union that they were resigning their memberships. The class includes anyone who has ever fallen within this definition, including former and retired public employees, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

179. Ms. McAdams is suing on behalf of all current and former members of SEIU Local 1021 or its affiliates whose paychecks were tapped for union-related payments after they had told the union that they were resigning their memberships. The class includes anyone who has ever fallen within this definition, including former and retired public employees, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

180. Ms. Boyle and Ms. Thompson are suing on behalf of all current and former members of SEIU Local 2015 or its affiliates whose paychecks were tapped for union-related payments after they had told the union that they were resigning their memberships. The class includes anyone who has ever fallen within this definition, including former and retired public employees, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

## Count 4: Unconstitutional Garnishment of Wages From Non-Union Members (public employers)

181. The Court has dismissed the claims against the Counties of Riverside, Alameda, and Monterey with prejudice, ECF No. 152 at 4, and the plaintiffs will not replead Count 4 against those defendants but respectfully preserve these claims for appeal. *See Lacey*, 693 F.3d at 928.

182. The Court has also dismissed the claims for prospective relief against the Board of Trustees of the California State University without leave to amend, ECF No.

152 at 4, and the plaintiffs will not replead those claims but respectfully preserve them for appeal. *See Lacey*, 693 F.3d at 928.

183. Although the Court's order allowed claims for retrospective relief against the Board of Trustees of the California State University to survive, any claim for retrospective relief against the Board of Trustees would be barred by sovereign immunity. *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). So there is nothing left of Count 4 after this Court's order of December 10, 2019.

## Count 5: Constitutional Challenge to Cal. Gov't Code section 1157.12(b)

184. The Court has dismissed Count 5 without leave to amend, ECF No. 152 at 6, and the plaintiffs will not replead Count 5 but respectfully preserve this claim for appeal. *See Lacey*, 693 F.3d at 928.

## Count 6: Failure to Inform Public Employees of Their Rights, and Failure to Secure Freely Given and Fully Informed Consent

185. The plaintiffs have decided to drop Count 6 as an independent claim for relief.

## Count 7: SEIU Local 1000's Revocation of Peter Finn's Non-Germane Objector Status

186. The Court has dismissed Count 7 with prejudice, ECF No. 152 at 8, and the plaintiffs will not replead Count 7 but respectfully preserve this claim for appeal. *See Lacey*, 693 F.3d at 928.

## Count 8: For Violations of First Amendment Rights Under 42 U.S.C. § 1983 and for Violations of State Tort Law for SEIU Local 2015's Unauthorized Deductions From Ms. Thompson's paycheck, Brought by Plaintiff Erin Thompson Against SEIU Local 2015

187. SEIU Local 2015 has taken unauthorized payments from Erin Thompson's paychecks.

188.  These unauthorized payments include: (1) The COPE contributions, which Ms. Thompson has repeatedly sought to cancel; and (2) The union's unlawful collection of monthly union dues from *each* of Ms. Thompson's monthly paychecks, a practice that allowed the union to double dip and triple dip into Ms. Thompson's wages.

189.  The union's collection of this money from Ms. Thompson violates the Speech Clause, the Supreme Court's ruling in *Janus*, and California tort law.

190.  SEIU Local 2015 is liable to Ms. Thompson for compensatory damages for taking COPE contributions after she asked the union to stop.

191.  SEIU Local 2015 is liable to Ms. Thompson for compensatory damages for taking monthly union dues from *each* of Ms. Thompson's monthly paychecks, a practice that illegally subjected Ms. Thompson to double or triple union dues.

192.  SEIU Local 2015 is equally liable to any other member of its bargaining units who was subjected to these payroll deductions without their consent.

193.  Ms. Thompson is suing on behalf of a class of all current and former members of SEIU Local 2015 or its affiliates whose paychecks were tapped for COPE contributions that they did not affirmatively consent to or that they sought to revoke. The class includes anyone who has ever fallen within this definition, including former and retired public employees, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

194.  Ms. Thompson is suing on behalf of a second class of all current and former members of SEIU Local 2015 or its affiliates whose wages were tapped for monthly union dues more than once per month. The class includes anyone who has ever fallen within this definition, including former and retired public employees, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

## Count 9: Illegal Dues Skimming

195. The Court has dismissed Count 9 without leave to amend as to prospective relief and with prejudice as to retrospective relief. *See* ECF No. 152 at 11. The plaintiffs will not replead Count 9 but respectfully preserve this claim for appeal. *See Lacey*, 693 F.3d at 928.

## Count 10: Unlawful Diversion of Retirees' Pensions

196. The plaintiffs have decided to drop Count 10 as a claim for relief and will not pursue this claim any further.

## CAUSES OF ACTION

197. The plaintiffs bring suit under 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, each of which supplies a cause of action for the individual and class-wide relief that they are requesting.

198. The plaintiffs are also suing the union defendants under the state-law torts of conversion, trespass to chattels, replevin, and any other state-law cause of action that offers relief for this unlawful seizure of their personal property. The plaintiffs invoke the supplemental jurisdiction of this court over these pendent state-law claims. *See* 28 U.S.C. § 1367.

## DEMAND FOR RELIEF—COUNT 2

199. The plaintiffs respectfully request that the court:

    a.    certify the plaintiff classes described in paragraphs 158, 160, 162, 164, and 167;

    b.    certify a defendant class of all affiliates of SEIU California;

    c.    award declaratory and injunctive relief that compels the union defendants to promptly accept and implement an employee's resignation from union membership, regardless of whether the resignation is communicated over the phone, in e-mail, or in writing;

1   d.  award nominal and compensatory damages caused by the union de-

2      fendants' failure to promptly accept a plaintiff's resignation from un-

3      ion membership;

4   e.  award costs and attorneys' fees under 42 U.S.C. § 1988;

5   f.  grant all other relief that the Court may deem just, proper, or equita-

6      ble.

7        **DEMAND FOR RELIEF—COUNT 3**

8 200. The plaintiffs respectfully request that the court:

9   a.  certify the plaintiff classes described in paragraphs 176–180;

10   b.  order the CSUEU, SEIU Local 521, SEIU Local 721, SEIU Local

11      1021, SEIU Local 2015, and all other union defendants to refund all

12      money that they took from any public employee who had previously

13      announced his resignation from the union and informed the union of

14      that decision, along with pre-judgment and post-judgment interest;

15   c.  enjoin the CSUEU, SEIU Local 521, SEIU Local 721, SEIU Local

16      1021, SEIU Local 2015 from taking any money from the paycheck

17      of any employee who has previously announced his resignation from

18      the union, unless that employee "clearly and affirmatively consents"

19      to those payments;

20   d.  declare that any pre-*Janus* union-membership contract that purports

21      to limit an employee's constitutional right to quit the union or with-

22      draw financial support is legally unenforceable;

23   e.  award costs and attorneys' fees under 42 U.S.C. § 1988;

24   f.  grant all other relief that the Court may deem just, proper, or equita-

25      ble.

1

## DEMAND FOR RELIEF—COUNT 8

2     201. The plaintiffs respectfully request that the court:

3         a.    certify the plaintiff classes described in paragraphs 193–194;

4         b.    order SEIU Local 2015 to refund all COPE contributions that it took

5                 from Ms. Thompson and from any other home health-care worker

6                 who did not affirmatively consent to those payments or who revoked

7                 their consent to those payments;

8         c.    order SEIU Local 2015 to refund all excess monthly union dues that

9                 it garnished from Ms. Thompson's monthly paychecks, or from the

10                 paychecks of any other home health-care worker;

11         d.    award costs and attorneys' fees under 42 U.S.C. § 1988;

12         e.    grant all other relief that the Court may deem just, proper, or equita-

13                 ble.

                                        Respectfully submitted.

                                    _/s/ Jonathan F. Mitchell_

Talcott J. Franklin*                      Jonathan F. Mitchell*
Texas Bar No. 24010629                Texas Bar No. 24075463
Talcott Franklin PC                      Mitchell Law PLLC
1920 McKinney Avenue 7th Floor      106 East Sixth Street, Suite 900
Dallas, Texas 75201                    Austin, Texas 78701
(214) 736-8730 (phone)              (512) 686-3940 (phone)
(800) 727-0659 (fax)                (512) 686-3941 (fax)
tal@talcottfranklin.com             jonathan@mitchell.law

Bradley Benbrook
California Bar No. 177786
Benbrook Law Group, PC
400 Capitol Mall, Suite 2530
Sacramento, California 95814
(916) 447-4900 (phone)
(916) 447-4904 (fax)
brad@benbrooklawgroup.com

* admitted _pro hac vice_

*Counsel for Plaintiffs and
the Proposed Class*

Dated: January 13, 2020

## CERTIFICATE OF SERVICE

I certify that on January 13, 2020, I served this document through CM/ECF upon all counsel of record in this case.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiffs and the Proposed Classes*