UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA BOYLE, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CALIFORNIA STATE UNIVERSITY EMPLOYEES UNION, et al.,<br><br>    Defendants. | Case No. 19-cv-00426-VC<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 159 |

    The plaintiffs have filed a third amended complaint, and the SEIU defendants (the only remaining defendants) have moved to dismiss parts of that complaint. The motion is granted.

    1. The plaintiffs themselves point out that Don Weber and Elizabeth McAdams lack standing to seek prospective relief on Counts 2 and 3, and Jamie Snyder lacks standing to seek prospective relief on Count 2. These aspects of these claims are accordingly dismissed on that basis.

    2. The parties agree that the claims for prospective injunctive and declaratory relief on Counts 2 and 3 are moot under the reasoning of the Court's earlier order in this case. *See* Order Granting in Part and Denying in Part Motions to Dismiss, Dkt. No. 152. The plaintiffs have thus waived any arguments that there are relevant differences, for purposes of mootness, between the prospective claims discussed in the prior order and the prospective claims at issue now. Counts 2 and 3 are accordingly dismissed insofar as they seek prospective injunctive and declaratory relief.

    3. The plaintiffs concede that their claims under Count 3 for relief under state law are preempted, and request that the Court dismisses those claims. The state-law claims under Count

3 are dismissed.

4. The only actually disputed issue, for purposes of this motion, is whether the plaintiffs can state a claim under section 1983 for the constitutional violations alleged in Count 2. They cannot.

To survive a motion to dismiss, the plaintiffs must adequately allege that the union's conduct meets the related requirements of "state action" for purposes of the First Amendment and conduct "under color of" state law for purposes of section 1983. Count 2, as the plaintiffs explain it, focuses exclusively on allegations that the defendant unions refused to "promptly accept" the plaintiffs' attempted resignations from union membership, and instead imposed "needless roadblocks" such as requiring the plaintiffs to mail a signed letter to union headquarters, or in some cases requiring them to submit a second resignation letter. *See* Third Amended Complaint ¶¶ 154–55, 161 (Dkt. No. 156). Count 2 does *not* focus on any potential constitutional violations related to the subsequent deduction of union dues from the paychecks of plaintiffs who attempted to resign. *See id.* ¶¶ 169–70 ("Count 2 concerns a public employee's constitutional right to resign his union *membership*—a constitutional right of association that pre-dates *Janus* and is distinct from whether a public employee has a constitutional right to terminate payroll deductions that a union diverts from his wages . . . [Count] 3, by contrast, concerns whether the defendants violated the plaintiffs' constitutional rights by continuing to divert money from their paychecks after the plaintiffs had informed the union of their desire to relinquish their membership and terminate payroll deductions.") (emphasis in original).

Count 2 does not allege any conduct that is "fairly attributable" to the state. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). To begin with, the plaintiffs have not adequately alleged that the conduct is "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *See id.* The unions' conduct in managing their membership rolls—including "refusing to promptly accept" membership resignations—does not involve the exercise of any right or privilege created by the state. The state did not create the unions or force any employee

to join them, and the plaintiffs haven't pointed to any state law or regulation creating substantive or procedural rules governing the defendant unions' management of their internal membership rolls. And neither the state's designation of the unions as exclusive bargaining representatives nor the state's previous requirement that nonmembers pay fair-share fees support the contention that the unions' internal membership determinations reflect rules of conduct imposed by the state. If the unions had a policy of requiring, for example, signed resignation letters sent to union headquarters, that was a policy of the unions, not of the state. *See Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 (9th Cir. 2011).

Furthermore, in refusing to accept membership resignations, the union cannot "fairly be said to be a state actor." *Lugar*, 457 U.S. at 937. The act of accepting or not accepting an employee's resignation from union membership, under the circumstances alleged here, does not meet any of the tests set out by the Supreme Court and the Ninth Circuit for treating a private party as a state actor. *See id.* at 939; *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 995 (9th Cir. 2013). In particular, assuming for argument's sake that there could be "joint action" between a union and the state where membership dues or fair-share fees are deducted from a state employee's paycheck and transferred to the union, the plaintiffs cannot rely on such a theory here because Count 2 focuses solely on the unions' internal membership practices, irrespective of any subsequent dues deductions made by the state. *Cf. Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 942 F.3d 352, 361 (7th Cir. 2019); *see also American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (courts must focus on "the specific conduct of which the plaintiff complains"). The plaintiffs argue that state action exists because a California statute "gave the unions power over their employees' paychecks" by requiring employees to submit requests for the termination of payroll deductions to the union, rather than to the state employer. *See* Cal. Gov't Code § 1157.12. But the Third Amended Complaint itself repeatedly emphasizes that Count 2 focuses on the unions' alleged failure to promptly accept resignations from membership, not any conduct related to the payroll deduction authorizations regulated by California law. *See, e.g.* Complaint ¶ 170 ("[T]he right to

resign one's *membership* in the union is distinct from one's right to *terminate payroll deductions*, and the plaintiffs properly brought Counts 2 and 3 as separate claims.") (emphasis in original).

In short, "[d]ecisions about membership are between the Union and its . . . members." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 818 (7th Cir. 2009). Count 2 is dismissed without leave to amend.

5. The plaintiffs must file a Fourth Amended Complaint within 21 days of this ruling limited to the parties and claims remaining in this case, which will not result in waiving their rights of appeal. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). The defendants must file an answer no later than 21 days after the complaint is filed.

**IT IS SO ORDERED.**

Dated: July 21, 2020

VINCE CHHABRIA
United States District Judge